15792

COLLINS v. COLLINS ESTATE, INC.

(36 S. E. (2d), 584)

*Messrs. Carlisle, Brown & Carlisle,* of Spartanburg, Counsel for Appellant,

*Mr. Sam R. Watt,* of Spartanburg, Counsel for Respondent.

January 7, 1946.

MR. ASSOCIATE JUSTICE OXNER delivered the unanimous Opinion of the Court.

John D. Collins died in 1925 leaving a large estate, including valuable business property in the City of Spartanburg. This Court held that the terms and provisions of his· will were too vague, obscure and ambiguous to be declared a valid testamentary instrument, except as to the appointment of an executor. *Davenport v. Collins et al.,* 161 S. C., 387, 159 S. E., 787.

Thereafter an action was brought to partition the real estate in kind between his twelve children and to authorize the refinancing of certain indebtedness upon the common property. As a result of this action, certain real estate, including some of the best business property in the City of Spartanburg, was allotted to six of the children, one of whom was J. Duren Collins. One of the other six children was a minor, another was *non compos mentis,* and J. Duren Collins had previously encumbered his undivided interest in the property. On account of these circumstances, the Court, in order to facilitate the management of the property, directed that the real estate so allotted to these six children be conveyed to a corporation to be formed for the purpose of taking title to same and that there be issued to each child ten shares of stock, representing one-sixth of the total capital stock of the proposed corporation. The corporation was further authorized to borrow an amount sufficient to pay the indebtedness of J. Duren Collins which constituted a lien on his undivided interest in the property and to accept his note for the amount advanced for this purpose, the payment of which was to be secured by a pledge of the stock to be issued to him. Pursuant to the terms of this decree, a corporation known as The Collins Estate, Inc., was formed, and on August 12, 1935, J. Duren Collins executed and delivered to the corporation his note in the principal sum of $12,500-.00, payable on August 12, 1955, and bearing interest from date at the rate of 5 1/2% per annum, payable annually. The note was secured by a pledge of the ten shares of stock issued by the payee corporation. The note further provided that if the maker defaulted in the payment of any interest prior to August 12, 1945, the holder could not declare the note due or sell the collateral pledged to secure its payment; but if any interest remained unpaid on that date or if thereafter there was any default in the payment of interest the holder had the option to declare the note immediately due

and payable and, upon thirty days' written notice to the maker, to sell the collateral at public or private sale.

J. Duren Collins, a resident of North Carolina, died testate on December 26, 1944. He bequeathed and devised all of his property to his wife, Dell R. Collins, and appointed her as executrix. She duly qualified in North Carolina and later, on April 20, 1945, was appointed as ancillary executrix by the Probate Court of Spartanburg County. She asked the payee of the note to agree, in the event that she defaulted in the payment of interest on August 12, 1945, not to exercise any of the options contained in said note before the end of her administrative year. This request was refused. Thereafter on July 21, 1945, she instituted this action for the purpose of restraining the payee of said note from exercising the option of declaring the note immediately due or selling the collateral until April 20, 1946, the end of her administrative year, and of securing the right at any time before that date to avoid a default by the payment of any accrued interest. On the verified complaint, a temporary restraining order was granted and The Collins Estate, Inc., was ruled to show cause on July 26, 1945, why the restraining order should not be continued "pending the final determination" of the action. The attorneys for said corporation appeared on the return day and requested an extension of time until July 30th for the filing of a return, which was granted. On that date the matter was heard on the verified return and verified complaint and a final order on the merits was filed on August 3, 1945, which granted the relief sought in the complaint. The payee of the note has appealed from this order.

It appears that there is now pending certain litigation between The Collins Estate, Inc., and Montgomery Ward & Company, a lessee of a portion of the property, which will not be concluded for a year or more, and that the outcome will materially affect the value of the pledged stock. It fur-

ther appears that the audit of the corporation's books for the fiscal year ending May 31, 1945, has not been completed. Respondent alleges that the financial condition of the corporation cannot be satisfactorily determined nor a fair estimate made of the value of the stock until the current audit is available; that the administration of her husband's estate has not yet reached a point where she is in a position to pay said note or the interest, or to protect the collateral in the event of a sale, but that she can do so if given a reasonable opportunity; that the value of the collateral far exceeds the amount of the indebtedness represented by said note; that the stock is closely held making it difficult to interest outsiders in its purchase, particularly in the absence of an audit and the final determination of the litigation above referred to; that if a sale is held at this time, with the probability of no bidders except the other stockholders or the corporation, the stock would bring far less than its real value, resulting in a great loss and sacrifice to the estate and an unjust advantage to the other stockholders; that the property of the corporation is encumbered by certain mortgage indebtedness which is being constantly reduced through annual payments on the principal sum; and that the relief sought would not in any manner prejudice the rights of the corporation or the other stockholders. The lower Court found that these allegations were in the main true and concluded that it would be inequitable and unconscionable to permit a sale of the stock under these circumstances.

The order of the lower Court granted the injunction sought in all respects and was filed before the time for answering had expired. The answer was filed on August 9th. We think the lower Court erred in passing the order in the form of a final judgment. The only question before the Court under the terms of the rule to show cause was whether the temporary restraining order should be continued "pending the final determination" of the action.

Moreover, the Circuit Judge did not have the power at this stage of the proceeding to decide the case upon its merits. The only question properly before him was whether he should grant an injunction *pendente lite. Alston v. Limehouse,* 60 S. C., 559, 39 S. E., 188; *Alston v. Board of Health,* 93 S. C., 533, 77 S. E., 727; *Phifer & Gossett v. Belue et al.,* 108 S. C., 61, 93 S. E., 388; *Cooke v. State Highway Department,* 158 S. C., 63, 155 S. E., 228; *Ætna Casualty & Surety Co. v. Yonce et al.,* 181 S. C., 369, 187 S. E., 536. We shall, therefore, construe the order the same as if the Circuit Judge had stated that it was to remain in force until a decision could be had upon the merits and determine whether there was error in granting an injunction *pendente lite.* Under all the circumstances, we cannot say that the lower Court abused its discretion in continuing in effect the restraining order until the case could be heard on the merits.

An acceleration clause of the nature stipulated in appellant's note is not uncommon in instruments of indebtedness and generally will be enforced as written. Equity will not ordinarily enjoin the exercise of an option by the creditor to declare the principal sum due on default in the payment of interest, as such a case does not usually fall within any applicable principle upon which relief against forfeiture is sometimes granted. But there are exceptions to the general rule. For instance, according to the more liberal view adopted by many of the Courts, a Court of Equity will relieve the mortgagor in exceptional cases from the effect of an acceleration clause when the default is caused by accident or mistake on the part of the mortgagor, who is acting in good faith, and where the enforcement of the clause would work a manifest hardship and injustice. Annotation in 70 A. L. R., beginning on page 1000. However, only the most appealing equity will justify a Court in transcending the allotted period and substituting another.

But as stated by Chief Justice Cardozo in a dissenting opinion in *Graf et al. v. Hope Building Corporation,* 254 N. Y., 1, 171 N. E., 884, 886, 70 A. L. R., 984, "there is no undeviating principle that equity shall enforce the covenants of a mortgage, unmoved by an appeal *ad misericordiam,* however urgent or affecting." He further said: "However fixed the general rule and the policy of preserving it, there may be extraordinary conditions in which the enforcement of such a clause according to the letter of the covenant will be disloyalty to the basic principles for which equity exists."

It is true that the foreclosure of a mortgage is a proceeding in equity where the creditor is the actor seeking the aid of the Court, while it is not necessary for the creditor to seek the aid of equity in order to sell the collateral under the power conferred in a note of the character involved in the instant case. We do not undertake to determine whether the maker, if living, could invoke the jurisdiction of a Court of Equity for the purpose of securing the relief sought in this case. But here the maker died before there had been any default which would permit the sale of this collateral and the executrix has just commenced the administration of his estate. We think equity jurisdiction may be invoked under the general principles upon which equity entertains jurisdiction in many cases involving decedents' estates. We take the following from 19 Am. Jur., page 155: "Executors and administrators are considered by the Court of Chancery as being trustees, and on this ground the Court exercises jurisdiction over them in behalf of heirs, devisees and legatees, and creditors with respect to the proper execution of their trust."

The right of appellant to declare the note and sell the collateral is derived by contract with the deceased and it is the policy of the law to recognize these rights as it does other contract rights acquired in good faith against persons since deceased. Ordinarily

the right of the creditor to realize upon the security in the manner provided by the contract should be protected. Accordingly, a mortgagee is often permitted to foreclose during an administrative year when no deficiency judgment is demanded. But we think it would be going too far to hold that under no circumstances should a Court interfere with the right of the creditor to exercise an option such as here involved, or that it is powerless to do so. An executor or administrator is "allowed twelve months to ascertain the debts due from the deceased." Section 8993 of the 1942 Code. It sometimes occurs that for many months such a fiduciary does not know whether an estate is solvent or insolvent. This fact may be material in determining whether such a fiduciary, assuming that he has sufficient funds on hand to enable him to do so, should pay the indebtedness in full and obtain possession of the collateral in those cases where its value is far less than the indebtedness which it secures. Payment in full might result in a preference in some instances where the estate is insolvent. There may be other cases where there is a large equity in the collateral and the estate is abundantly solvent, but the obligation matures so soon after the death of the deceased that such a fiduciary is not afforded a reasonable opportunity to realize on the assets so as to enable him to discharge such an obligation according to the letter of the contract. Other circumstances could be mentioned which might have a material bearing on the situation of such a fiduciary. All of the circumstances in each case must be considered. We are now speaking of the general power of a Court of Equity to intervene and not whether the power should be exercised in any particular case.

We do not think the foregoing views conflict with the case of *National Loan Exchange Bank v. Hiers et al.*, 125 S. C., 57, 117 S. E., 809, upon which appellant so strongly relies. There the receiver of the pledgor sought an injunction to restrain the pledgee from selling certain collateral

under a power of sale contained in a note which the pledgor executed, and the injunction was refused. The suit was not by original action for injunction and no facts appeared to sustain the allegation that the petitioner was "powerless to protect himself at the proposed sale of said notes." No good reason appeared in that case why the power of sale should not be exercised in the usual manner.

We, therefore, conclude that a Court of Equity is empowered to assume jurisdiction, but whether the power to grant injunctive relief should be exercised depends upon all the circumstances. As the case is not before us on the merits, we think it is proper to refrain from any further discussion of the facts relied upon by the respondent for injunctive relief. It is sufficient to say that we do not think the lower Court erred in granting an injunction *pendente lite.*

The question discussed in the briefs relating to the liability of respondent for reasonable attorneys' fees under the stipulation in the note providing for attorneys' fees "in case of suit or collection by an attorney," and the further question of whether the proceedings heretofore mentioned authorizing the execution of this note, are *res judicata* and not subject to collateral attack in this proceeding are not passed upon and should be determined when the case is tried on its merits.

The lower Court required respondent to execute a bond in the amount of $500.00, with surety, "conditioned upon the plaintiff paying to the defendant such damage as the defendant may suffer through the depreciation in value of the ten shares of stock referred to by reason of the postponement in the exercise of the power of sale herein ordered." Appellant contends that the bond should have been conditioned, as required by Section 570, Code of 1942, upon respondent's paying such damages as appellant "may sustain by reason of the injunction," if the Court should finally decide that respondent was not entitled

thereto. We think this contention should be sustained. Appellant further contends that the amount of the bond is inadequate. The amount may appear small but we do not feel justified in holding that there was an abuse of discretion.

It is the judgment of this Court that the order of the lower Court be modified in accordance with the views herein expressed, and that the injunction *pendente lite* be dissolved unless respondent, within fifteen days after the remittitur is filed, executes and delivers to the Clerk of Court of Spartanburg County a bond in the sum of $500.00, with surety to be approved by said Clerk, conditioned as required by Section 570 of the 1942 Code; and if said bond is executed within the time and in the manner herein required, the injunction granted by the lower Court shall remain in effect pending the final determination of this action.

MR. CHIEF JUSTICE BAKER and MESSRS. ASSOCIATE JUSTICES FISHBURNE, STUKES and TAYLOR concur.